IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

HENRY ODOM, JR., and,          :
JUSTIN BOSTIC,                 :
                               :
      Plaintiffs,              :
                               :
v.                             :
                               :     No. 5:14-CV-22 (CAR)
JASPER COUNTY, CHARLES         :
ROPER, SHERIFF DONNIE POPE,    :
and DETENTION OFFICER          :
NATHAN WILKS,                  :
                               :
      Defendants.              :
_____:

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs Henry Odom Jr. and Justin Bostic bring claims pursuant to 42 U.S.C. §
1983 and Georgia state law against Defendants Jasper County, Georgia, former Jasper
County Sheriff Charles Roper, current Jasper County Sheriff Donnie Pope, and
Detention Officer Nathan Wilks.   Both Plaintiffs contend Defendants violated their
constitutional rights by using excessive force while Plaintiffs were detained at the Jasper
County Jail. Currently before the Court are Defendants' Motions for Summary
Judgment [Docs. 36, 37].  After careful consideration, the Court finds Defendants Jasper
County, Roper, and Sheriff Pope are entitled to summary judgment as a matter of law.
However, genuine issues of material fact exist regarding the claims against Defendant

Wilks. Accordingly, Motion [Doc. 36] is **GRANTED**, and Motion [Doc. 37] is **DENIED** as to Defendant Wilks' Motion for Summary Judgment, and **GRANTED** as to Defendant Wilks' Motion to Sever.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[3] *See id.* at 249-52.

[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

## BACKGROUND

This lawsuit arises from two separate events, thus the Court will address the facts surrounding each Plaintiffs' claims separately.   For the purposes of these Motions, the material facts in the light most favorable to Plaintiffs, the nonmovants, are as follows:

In 2012, while incarcerated at the Jasper County Detention Center ("jail"), Plaintiffs claim Defendant Wilks subjected them to excessive force in violation of their Fourth, Eighth, and Fourteenth Amendment rights.  Defendant Wilks was as a detention officer at the jail for the Jasper County Sheriff's Office ("JSCO") from 2011 to 2012.[8] Charles Roper was the Jasper County Sheriff while Wilks was a detention officer, but

---

[5] *Celotex Corp.,* 477 U.S. at 323 (internal quotation marks omitted).
[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.,* 477 U.S. at 324-26.
[7] *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991).
[8] Def. Wilks's Stmt. of Material Facts, [Doc. 37-1] at pg 1.

retired in December 2012.  On January 1, 2013, Donnie Pope became the current Sheriff of Jasper County.[9]

***Plaintiff Henry Odom Jr.***

In June 2012, Plaintiff Odom was a pretrial detainee at the jail when he had an altercation with another inmate, Christopher Fowler.  Plaintiff Odom claims Defendant Wilks caused the altercation by offering Fowler an incentive to assault him. [10]

On June 5, 2012, Odom entered the jail's maximum security section to retrieve a dictionary but was unable to locate it.  Odom then entered Fowler's cell with several other inmates to ask for the dictionary, and a fight ensued between Odom and Fowler. According to Odom, Fowler attacked him, without provocation, immediately after he asked for the dictionary.  Fowler tried to grab Odom by the legs, and both men struggled with each other.  Ultimately, Fowler pushed Odom backwards causing him to fall and hit his head on the toilet.  The fall knocked Odom unconscious, but Odom was told by witnesses that Fowler jumped on top of him and continued to beat him up after he hit his

---

[9] Defs. Stmt. of Material Facts, [Doc. 36-4] at pg 2-3.
[10] Pl. Odom Depo., [Doc. 38-4] at pg 50.

head.[11]   Odom eventually had to be taken to the hospital and was diagnosed with a fractured orbit on his left eye, which required surgery.[12]

After the attack occurred, Odom discovered that a few days earlier two inmates overheard Defendant Wilks offer Fowler a honey bun if he would beat up Odom.[13]   On June 9, 2012, Odom filed a grievance with the JSCO.[14]   The JSCO did an investigation into the altercation and the alleged bribery.   The JSCO determined both inmates were the aggressors and did not find proof that Wilks bribed Fowler with a honey bun.[15] Lieutenant Robinson conducted the investigation by interviewing several inmates and reviewing video footage from June 2, 2012, the day one of the inmates said the bribe occurred.[16]   Though the video did not have sound, Lt. Robinson stated he did not see Wilks speaking to Fowler, and based on this information, concluded Odom could not

---

[11] *Id*. at pg 50, 53-60.

[12] *Id*. at pg 50.

[13] *Id*. at pg 72-77; Clemons Dec., [Doc. 46] at pg 2.

[14] Depo. Exhibits, [Doc. 38-11], Ex. 10, Part B, at pg 6.

[15] Defs. Stmt. of Material Facts, [Doc. 37-1] at pg 4; Depo. Exhibits, [Docs. 38-10 & 38-11], Ex. 10.

[16] Depo. Exhibits, [Docs. 38-10 & 38-11], Ex. 10.  Lt. Robinson also interviewed two trustees at the jail who both said they heard Defendant Wilks tell Fowler after the fight he should give Fowler a honey bun for beating up Odom. *Id.*; Robinson Depo., [Doc. 38-5] at pg 61-62.

prove Wilks bribed Fowler.[17]  Wilks was never contacted during this investigation but was terminated a few days later for matters unrelated to these claims.[18]

***Plaintiff Justin Bostic***

In February 2012, Plaintiff Bostic was serving a sentence on a misdemeanor charge at the jail when Defendant Wilks administered pepper spray under Bostic's holding cell door.  Plaintiff Bostic claims Defendant Wilks' use of pepper spray was excessive force because Bostic was already in the holding cell behind a closed door when he was sprayed.[19]

On February 11, 2012, Bostic was attempting to make a phone call using the pay phones in the general population area of the jail when he discovered the phones were turned off.  Bostic contacted Defendant Wilks, who was monitoring the area from the control booth, and asked for the phones to be turned back on.  Wilks stated the phones were off for the day.  However, just moments before Bostic had witnessed someone else using the phone.[20]  Bostic began to repeatedly press the call button, going "back and forth" with Wilks to get the phones turned on.[21]  Wilks threatened to come down to the

---

[17] Robinson Depo., [Doc. 38-5] at pg 69:23-25, 70:1-4.

[18] *Id*. at pg 65-73; Def. Wilks Depo., [Doc. 38-7] at pg 24.

[19] Pl. Bostic Depo., [Doc. 38-2] at pg 11, 34-35.

[20] *Id*. at pg 27-28.

[21] *Id*. at pg 27.

general population area if he did not stop pressing the button and then eventually went down.[22]

Once in the general population area, Bostic continued the "back and forth" with Wilks and accused Wilks of cutting off the phone only because he wanted to use it. Wilks advised Bostic he was being removed from general population to the segregation cell due to his behavior.  As Wilks walked him to the segregation cell, Bostic admitted he was angry, and Wilks had "really ran [his] blood up."[23]  Bostic continued to express his frustrations with Wilks, and Wilks responded with "get your ass on in [the holding cell] and you're going to stay in there till the next shift change."[24]  Once Bostic was in the segregation cell with the door shut, Bostic raised his voice and said to Wilks, "you got them tight ass pants on like a damn faggot."[25]

According to Bostic, Wilks "turned red as an apple" and ran back to Bostic's cell. Wilks pulled out his pepper spray and sprayed it under the crack of the cell door for three to five seconds, leaving a spot on the floor the size of a cupcake.[26]  The pepper spray caused Bostic to gasp for air, cough, and spit up phlegm, and made his throat and eyes

---

[22] *Id.* at  pg 27-28.
[23] *Id.* at pg 28-29, 29:5.
[24] *Id.* at pg 28-29, 29:17-20.
[25] *Id.* at pg 30, 30:15-17.
[26] *Id.* at pg 30: 21-24, 43-44.

burn for approximately an hour and half.[27]   Bostic was never offered water or a shower, nor was the spot of pepper spray cleaned off the floor.[28]   Bostic was left in the segregation cell until the next shift change, which was approximately six to eight hours later.[29]   Other than the comment he made to Wilks, Bostic claims he did not yell or bang on the door or wall.[30]   Additionally, Gloria Williams, a radio tech operator at the JSCO, says she only heard loud voices; she did not hear anyone banging on the door or kicking the cell.[31]

Immediately following this incident, Bostic filed a grievance with the JSCO against Defendant Wilks, claiming cruel and unusual punishment.[32]   On February 15, 2012, the JSCO issued Wilks a written warning, stating this was an "unnecessary action" because the inmate was already secured in the holding cell when the pepper spray was administered.[33]   However, Defendant Roper would have preferred to suspend Wilks for his actions, but he was unable to do so because they were low on staff and could not afford to lose anyone else at the time.[34]

---

[27] *Id.* at  pg 46-47, 50-52.
[28] *Id.* at pg 47.
[29] *Id.* at pg 31.
[30] *Id.* at pg 31-32.
[31] Williams Depo., [Doc. 38-8] at pg 48-50.
[32] Depo. Exhibits, [Doc. 38-9], Ex. 5, pg 6.
[33] Depo. Exhibits, [Doc. 38-9], Ex. 6, pg 7-8; Def. Roper Depo., [Doc. 38-6] at pg 21; Baxter Depo., [Doc. 38-1] at pg 33.
[34] Def. Roper Depo., [Doc. 38-6] at pg 25; Baxter Depo., [Doc. 38-1] at pg 30-31.

## DISCUSSION

Based on these events, Plaintiffs brought claims against Defendants Jasper County, former Sheriff Roper, current Sheriff Pope, and Wilks.  Specifically, Plaintiffs bring excessive force claims pursuant to 42 U.S.C. § 1983 and state law claims of negligence and assault and battery against Defendant Wilks.  Plaintiffs also seek to hold the Jasper County Sheriff liable pursuant to 42 U.S.C. § 1983 for failure to train and supervise.  Now, Defendants Roper, Sheriff Pope, and Jasper County bring a motion for summary judgment based on sovereign and qualified immunity.  Defendant Wilks brings a separate motion for summary judgment, as well as a motion to severe.  The court will first address the claims against Defendants Jasper County, Roper, and Sheriff Pope and then discuss each Plaintiff's claims against Defendant Wilks separately.

### I.  Claims against Jasper County

Defendants argue Jasper County is entitled to summary judgment because it exercises no control over the Jasper County Sheriff.[35]  Plaintiffs do not dispute Jasper County is not a proper Defendant and should be dismissed.[36]

---

[35] Under Georgia law, a sheriff has the authority to hire and fire employees, direct and regulate their duties, and control their daily activities, including the power in this discretion to appoint deputies. O.C.G.A. § 15-16-23. A county is precluded from controlling or affecting the sheriff's office or personnel. *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1333 (11th Cir. 2003). Therefore, as a matter of law, a sheriff is "independent of the county and its governing body." *Martin v. Peach Cnty., Ga.*, 5:10-cv-236, 2001 WL 4830176, at * 6 (M.D. Ga. Oct. 12, 2011).

[36] *See* Pls. Brief in Response to Defs. Mtn. for Summary Judgment, [Doc. 43-1] at pg 2.

Accordingly, with respect to all claims against Defendant Jasper County, the Motion for Summary Judgment is **GRANTED**.

## II. Claims against the Jasper County Sheriff

Plaintiffs assert 42 U.S.C. § 1983 claims against the Jasper County Sheriff in both his official and individual capacities, alleging their constitutional rights were violated by the Sheriff's failure to train and supervise Defendant Wilks.  To support their claims, Plaintiffs show that inmates filed more grievances against Wilks than any other jailer.[37] Plaintiffs also present evidence that Defendant Wilks was disciplined by his supervisor, Lieutenant Baxter, for (1) failing to give inmates their medications on time; (2) using pepper spray against Plaintiff Bostic when unnecessary; and (3) interacting with inmates in a disrespectful or rude manner.[38]   Despite these disciplinary incidents, Defendant Wilks was only given verbal or written warnings.  Plaintiffs contend evidence sufficiently shows the Sheriff's failure to train, supervise, and manage Defendant Wilks resulted in the deprivations of Plaintiffs' constitutional rights.  The Sheriff, however, argues the Eleventh Amendment bars any official capacity claims against him, and he cannot be held liable under a supervisory liability theory, as Plaintiffs did not suffer a constitutional deprivation attributable to the Sheriff's custom,

---

[37] Baxter Depo., [Doc. 38-1] at pg 23; Williams Depo., [Doc. 38-8] at pg 28.
[38] Baxter Depo., [Doc. 38-1] at pg 23-25, 37; Depo. Exhibits, [Doc. 38-9].

policy, or practice.  The Court will address the official capacity claims first, and then discuss Plaintiffs' claims against the Sheriff in his individual capacity.

### A.  Official Capacity Claims[39]

The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued."[40]  "To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State."[41] "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."[42]  The Court finds because the Sheriff was acting as an arm of the State when promulgating training policies and supervising the jail he is entitled to Eleventh Amendment immunity.

The Eleventh Circuit has consistently held that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State."[43]  Specifically, in *Turquitt v.*

---

[39] Rule 25 of the Federal Rules of Civil Procedure provides for automatic substitution of public officers in actions against them in their official capacities when the originally named officer leaves office.  Thus, Defendant Sheriff Pope is substituted for Defendant Roper for all official capacity claims.

[40] *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1107 (2004).

[41] *Id*.

[42] *Id*.

[43] *Id*. at 1315 (holding that the sheriff acted as arm of the state when he establishes the use of force policy at the jail and trains and disciplines his deputies in this regard); *see also Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir.2007) (holding that sheriff was entitled to immunity when establishing policies at the jail for processing arrestees); *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1324–25 (11th

*Jefferson County*, the Eleventh Circuit concluded that "the sheriff has control over inmates of the jail, the employees of the jail, and the jail itself,"[44] and therefore, the sheriff acts as an arm of the state regarding "the daily operations of the jails" and the "supervision of inmates."[45]   Here, Plaintiffs contend Defendant failed to properly train, supervise, and manage a detention officer at the jail.   These functions concern the daily operation of the Jasper County Jail, and thus, when executing these functions, the Sheriff is acting as an arm of the State.   Accordingly, Defendant is entitled to Eleventh Amendment immunity from suit in his official capacity.[46]

---

Cir.2005) (holding that county sheriff acted as arm of state, rather than county, when promulgating policies and procedures governing conditions of confinement at county jail).

[44] In *Turquitt*, the Eleventh Circuit was applying Alabama law, which bestows this duty upon the Sheriff. 137 F.3d at 1289.   However, this also applies in Georgia. *See Manders*, 338 F.3d at 1329 ("Having applied the Eleventh Amendment factors, we conclude [the Sheriff] in his official capacity is an arm of the State, not [the] County, in establishing use-of-force policy at the jail and in training and disciplining his deputies in that regard.").

[45] 137 F.3d 1285, 1289 (11th Cir. 1998); *see also Youngs v. Johnson*, No. 4:06-CV-19(CDL), 2008 WL 4816731, at *6 (M.D. Ga. Oct. 30, 2008) ("In general, the Eleventh Circuit has concluded that Georgia sheriffs are an 'arm of the State' in the operation of county jails and are therefore entitled to Eleventh Amendment immunity for claims arising from jail operations.").

[46] To the extent Plaintiffs bring claims against Defendant Wilks in his official capacity as a detention officer he is also entitled to Eleventh Amendment immunity because he is an employee of the Sheriff.  *See Pelliterri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015); *Carter v. Butts Cnty., Ga.*, 110 F.Supp.3d 1325, 1350-51 (M.D. Ga. 2015) (citing *Scruggse*, 256 F. App'x at 231-32 ("As an employee of Sheriff Pope, Lieutenant [], in his official capacity, is likewise entitled to Eleventh Amendment immunity.")).

### B.  Individual Capacity Claims

Plaintiffs argue the Sheriff is liable in his individual capacity under § 1983 for failing to properly train and supervise Defendant Wilks.[47]  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."[48]  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."[49]  "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."[50]   Here, because Plaintiffs do not allege the Sheriff personally participated in the incident, Plaintiffs must show a causal connection between the Sheriff's actions and the alleged constitutional violations.

A causal connection may be established when: (1) "the supervisor's policy or custom resulted in deliberate indifference;" (2) "the supervisor was on notice, by a

---

[47] It is unclear whether Plaintiffs also allege § 1983 excessive force claims against the Sheriff in his individual capacity.  However, they do not argue there was a custom or policy in place regarding the use of force that constituted deliberate indifference and caused this violation. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  Thus, if Plaintiffs are attempting to assert this claim, the Court finds it would fail because Plaintiffs do not present any evidence to support it.  There is no need to discuss the Sheriff's qualified immunity analysis.
[48] *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1296 (11th Cir. 1999)).
[49] *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (internal quotation marks and citation omitted).
[50] *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he failed to do so;" or (3) "the supervisor directed the subordinate to act unlawfully and failed to stop the unlawful action."[51]  Plaintiffs only contend the Sheriff's failure to properly train, supervise, and discipline Defendant Wilks resulted in deliberate indifference to Plaintiffs' constitutional rights.

"A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his 'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains."[52]  "Only when the failure to train amounts to 'deliberate indifference' can it properly be characterized as the 'policy' or 'custom' that is necessary for section 1983 liability to attach."[53]  "Failure to train can amount to deliberate indifference when the need for more or different training is obvious ... such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures ... and when the failure to train is likely to result in the violation of a constitutional right."[54]

---

[51] *White v. Thompson*, 299 F. App'x 930, 933 (11th Cir.2008) (quoting *Cottone*, 326 F.3d at 1360).
[52] *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1398 (11th Cir.1994) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564–65 (11th Cir.1990)).
[53] *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).
[54] *Id.* at 1397–98 (internal citations omitted).

Here, Plaintiffs only point to four specific incidents of misconduct by Defendant Wilks to show the Sheriff was deliberately indifferent and on notice of the need for corrective measures.    However, "[a] pattern of *similar* constitutional violations by untrained *employees* is 'ordinarily necessary' to demonstrate deliberate indifference for purpose of failure to [supervise]."[55]   The grievances Plaintiffs present as evidence fail to show a pattern of similar violations.    Plaintiff Odom's claim concerns bribing one inmate to assault another, while Plaintiff Bostic's involves the proper use of pepper spray.   The other grievances Plaintiffs present relate to administering medicine on time and speaking to inmates appropriately.

Additionally, Plaintiffs only present incidents involving Defendant Wilks, who is but one of the detention officers under the Sheriff's supervision.[56]   Plaintiffs do not present any evidence of a "persistent failure to take disciplinary action against officers" with regard to excessive force or the use of pepper spray.[57]   To establish a policy or

---

[55] *Connick v. Thompson*, 563 U.S. 51, 61 (2001) (emphasis added) (citing *Bd. Of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407-408 (1997)).   "The rule suggested by the Supreme Court for purposes of failure to train also applies to failure to supervise." *Thompson v. Sheriff, Pinellas Cnty.*, 542 F. App'x 826, 828 n.1 (11th Cir. 2013) (per curiam) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998)).

[56] *See Thompson*, 542 F. App'x at 828-29 (noting the Sheriff supervised over 900 deputies and finding evidence of only one deputy's misconduct was not enough to put the sheriff on notice).   Also, in *Thompson* the Eleventh Circuit noted the plaintiff did not challenge any of the Sheriff's written policies or training procedures, even though the plaintiff was bringing a failure to train claim. 542 F. App'x at 829. Here, Plaintiffs also do not challenge any of the Sheriff's written policies regarding discipline or training procedures.

[57] *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *see also Gray v. City of Eufaula*, 31 F.Supp.2d 957, 965-66 (M.D. Ala. 1998) ("The second method of holding a governmental entity liable is by

custom, it is necessary to show a persistent and widespread practice.   The isolated actions of Defendant Wilks are insufficient to establish liability.[58]

In *Thompson v. Sheriff, Pinellas County*, the Eleventh Circuit assumed *arguendo* that a pattern of violations on the part of a single deputy was enough to show the "ordinarily necessary" pattern of similar constitutional violations, and still found three complaints of misconduct against one officer did not put the Sheriff on notice.[59]   Each complaint was investigated and found unsubstantiated.[60]   The Eleventh Circuit concluded "that the investigation in each case was adequate; a perfect investigation is not necessary."[61]   Here, the investigation into Plaintiff Odom's complaint found the wrongdoing alleged was unsubstantiated, and Defendant Wilks was terminated shortly after the pepper spray incident with Plaintiff Bostic.   Thus, even assuming Plaintiff could prove a pattern of similar constitutional violations based on Wilks' misconduct alone, Plaintiff fails to present sufficient evidence to place the Sheriff "on notice of a

---

showing that a government has demonstrated a 'persistent failure to take disciplinary action against officers.'").

[58] *See Fundiller*, 777 F.2d at 1443; *Gray*, 31 F.Supp.2d at 965-66 (citing *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally, random acts or isolated incidents are insufficient to establish a custom or policy.")).

[59] 542 F.App'x at 829.

[60] *Id.*

[61] *Id.* at 828-29 ("We are satisfied that nothing in the investigation files, and nothing related to these three citizen complaints, indicates an obvious need for additional supervision.").

need for additional supervision such that his failure to provide [] would constitute deliberate indifference."[62]  Therefore, Plaintiffs' failure to supervise claims must fail.

Accordingly, the Sheriff is entitled to summary judgment on these claims.

### C. State Law Claims

Plaintiffs also seem to allege state law claims against the Jasper County Sheriff in both his official and individual capacities.  In the Motion for Summary Judgment, the Sheriff contends sovereign immunity bars the official capacity claims and official immunity bars any individual capacity claims.  In their response, Plaintiffs do not dispute this.  The Court agrees sovereign and official immunity bar each claim;[63] thus the Sheriff is entitled to summary judgment on all state law claims.

Accordingly, with respect to all claims against Sheriff, the Motion for Summary Judgment is **GRANTED**.

### III. Claims against Wilks

Plaintiffs both bring excessive force claims under § 1983 and negligence and assault and battery claims under state law against Defendant Wilks.  Defendant Wilks contends he did not violate either Plaintiff's constitutional rights and is entitled to

---

[62] *Id*. at 829 (citing *Connick*, 563 U.S. at 61); *see also Gray*, 31 F.Supp.2d at 966.

[63] Sovereign immunity bars claims against the Jasper County Sheriff is his official capacity.  *See Seay v. Cleveland*, 270 Ga. 64, 65 (1998) (Sovereign immunity applies to sheriff sued in his official capacity, in the absence of waiver.).  The Sheriff's acts were discretionary and any individual capacity claims are thus barred by official immunity. *See Cameron v. Lang*, 274 Ga. 122 (2001); *Norris v. Emanuel Cnty.*, 254 Ga. App. 114, 118 (2002).

summary judgment.  Defendant Wilks also objects to declarations filed by Plaintiffs to support Odom's claim.  The Court will first address the evidentiary objections and then discuss each Plaintiff's excessive force and state law claim.

### A.  Evidentiary Issues

In response to Defendant Wilks' Motion for Summary Judgment, Plaintiff Odom submitted two declarations to support his claims that Defendant Wilks bribed another inmate to assault Odom.  Gregory Thurman claims inmate Fowler told Thurman that Defendant Wilks bribed him to beat up Odom,[64] and Travis Clemons states he heard Defendant Wilks bribe inmate Fowler with a honey bun.[65]  Defendant Wilks submitted objections to both declarations, claiming they are inadmissible evidence and should not be considered for the pending motions.  First, Defendant argues Plaintiffs did not serve mandatory disclosures of Thurman and Clemons as required by Fed.R.Civ.P. 26(a)(1), and their declarations should be excluded from evidence. Second, Defendant argues Thurman's declaration is inadmissible because it is mere speculation and based on hearsay.  Plaintiffs contend the declarations are admissible because the individuals were identified during discovery, and their statements are not hearsay.

---

[64] Dec. Thurman, [Doc. 45] at pg 2.
[65] Dec. Clemons, [Doc. 46] at pg 2.

*Rule 26 Violation*

Fed.R.Civ.P. 26(a) requires that a party disclose all names of witnesses upon whose testimony the party intends to rely on at trial or during the pretrial motions stage of the case.  Moreover, a party "must supplement or correct its disclosure ... in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[66]  The standard for determining whether to exclude evidence under Fed.R.Civ.P. 37(c)(1) is whether a party's failure to identify a witness as required by Rule 26(a) or (e) is "substantially justified or is harmless."[67]

In ruling on excluding the declarations, the Eleventh Circuit has pointed to three factors for the district court to consider: (1) the importance of the testimony; (2) the reason for the party's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness is allowed to testify.[68]  However, the Court has broad discretion in deciding whether a failure to disclose evidence necessitates exclusion under Rule 37(c)(1).[69]  To avoid exclusion, the party allegedly failing to comply with

---

[66] Fed.R.Civ.P. 26(e)(1)(A).

[67] Fed.R.Civ.P. 37(c) (1) (emphasis added); *see also Reese v. Herbert*, 527 F.3d 1253, 1265–66 (11th Cir.2008).

[68] *Bearint ex rel. Bearint v. Dorel Juvenile Group, Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004).

[69] *See, e.g., Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1222–23 (11th Cir. 2010).

Rule 26 bears the burden of establishing that the failure was substantially justified or harmless.[70]

Here, Plaintiffs do not contest they did not include the witnesses in their initial disclosures or failed to supplement the disclosures once identifying both parties. Instead, Plaintiffs argue it was unnecessary to include the witnesses and supplement the disclosures because both Thurman and Clemons were known to Defendant Wilks during the entire discovery process.  In fact, the witnesses were initially identified by Defendant when he produced statements from them during discovery.  Additionally, multiple people who were deposed identified both Thurman and Clemons, including Defendant Wilks.[71]  Though Plaintiffs did not initially disclose either witness, they did identify Thurman and Clemons in interrogatories as persons who may have knowledge or information about the case.[72]  Plaintiffs also point out they were unaware of the witnesses' addresses or telephone numbers and had to hire an investigator to locate both parties after Defendant Wilks filed his motion for summary judgment.

---

[70] *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (per curiam).
[71] Def. Wilks Depo., [Doc. 38-7] at pg 20-21, 62, 67-68, 73-75, 80-81; Baxter Depo., [Doc. 38-1] at pg 39, 41. Kennedy Depo., [Doc. 38-3] at pg 33, 39-41, 48; Robinson Depo., [Doc 38-5] at pg 30, 31, 42, 50, 52, 60, 63, 65, 66, 69.
[72] Pls. Response to Objections, [Doc. 53-1] Ex. A at pg 2.

The Court finds Plaintiffs' failure to initially disclose harmless, and Wilks cannot claim he was prejudiced when he also knew of Thurman and Clemons.  Thus, the Court declines to exclude the declarations under Rule 37.

### Hearsay Objection

Defendant also objects to Clemons' and Thurman's declarations as hearsay. Plaintiffs argue Clemons' statements are not hearsay because they are statements made by Defendant Wilks, a party opponent.  However, Plaintiffs do not contest Thurman's statements are hearsay.   The Court agrees Clemons' statements are admissible as opposing party statements,[73] but finds Thurman's statements are inadmissible hearsay.

In general, inadmissible hearsay cannot be considered on a motion for summary judgment.[74]  This rule applies to declarations, affidavits, and deposition testimony.[75] However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form."[76]  Thus, if the statement falls within an exception to the hearsay rule or is not offered for the truth of the matter asserted, it may be considered on summary judgment.

---

[73] Fed.R.Evi. 801(d)(2).
[74] *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir.1999).
[75] *Id*.
[76] *Id*. at 1323 (internal quotation marks and citations omitted).

21

Here, Thurman's declaration includes statements he heard from a third party regarding Defendant Wilks.[77]  Thurman has no personal knowledge of the events and is offering the statement for the truth of the matter asserted.[78]   The Court finds the statements in Thurman's declaration are inadmissible hearsay and do not fall within any exceptions.   Therefore, the Court will not consider the declaration for purposes of summary judgment.

Accordingly, Defendant Wilks' objection to Clemons' declaration is **OVERRULED**, and the objection to Thurman's declaration is **SUSTAINED**. The Court will provide Defendant Wilks an additional 30 days from the date of this order to depose Clemons and resubmit a motion for summary judgment if necessary.

### B.  § 1983 Excessive Force Claims

Plaintiffs both bring § 1983 excessive force claims against Defendant Wilks in his individual capacity.  Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws."[79]  The Court will now address each Plaintiffs § 1983 excessive force claims against Defendant Wilks separately, as different standards apply for pretrial detainees and prisoners.

---

[77] Thurman Dec., [Doc. 45] at pg 2.
[78] Fed.R.Evi. 801; Fed.R.Evi. 802.
[79] 42 U.S.C. § 1983.

*Plaintiff Odom*

Because Plaintiff Odom is a pretrial detainee his claims are actionable through the Fourth and Fourteenth Amendment.[80]  Odom claims Defendant Wilks violated his Fourth Amendment right, applied through the Fourteenth Amendment, by bribing another inmate to assault him.  Defendant Wilks argues Plaintiff did not present any admissible evidence to support this claim, and he did not bribe inmate Fowler with a honey bun.

The Fourth Amendment's prohibition against unreasonable searches and seizures encompasses the right to be free from excessive force.[81]  The Supreme Court has determined a pretrial detainee's excessive force claims are actionable under the Fourteenth Amendment's due process clause, rather than the Eighth Amendment's cruel and unusual punishment clause, and such claims are analyzed using the same objective reasonableness test applicable to Fourth Amendment claims.[82]  Thus, Plaintiff Odom must only show "that the force purposely or knowingly used against him was objectively unreasonable."[83]

As explained above, the Court has determined Plaintiff may use Clemons' declaration to support his claim.  In his declaration, Clemons states he heard Defendant

---

[80] *See Kingsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466, 2472–73 (2015).
[81] *Lee*, 284 F.3d at 1197 (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).
[82] *Kingsley*, 135 S.Ct. at 2472–73 (2015).
[83] *Graham*, 490 U.S. at 396.

Wilks offer inmate Fowler a honey bun if Fowler would beat up Odom.[84]   A jury could reasonably find that bribing another inmate to assault Plaintiff would be purposeful force used against Plaintiff and objectively unreasonable.[85]   Thus, Plaintiff has presented evidence showing a genuine fact dispute as to whether Defendant Wilks bribed inmate Fowler to assault Plaintiff.   Accordingly, Defendant's Motion regarding this claim is **DENIED**.

*Plaintiff Bostic*

Because Plaintiff Bostic was a prisoner his claims are actionable through the Eighth Amendment.[86]   Plaintiff Bostic claims Defendant Wilks violated his Eighth Amendment right to be free from cruel and unusual punishment by intentionally administering pepper spray under Plaintiff's holding cell's door.   Defendant Wilks contends he did not violate Bostic's constitutional right, and any injury caused by the pepper spray was only *de minimus*.   Defendant does not raise a qualified immunity

---

[84] Clemons Dec., [Doc. 46] at pg 2.

[85] *See Irving v. Dormire*, 519 F.3d 441, 450 (8th Cir. 2008) ("It should have likewise been clear that a guard may not threaten an inmate with death by means of arming, bribing, and inciting other inmates to accomplish that which the guard may not do directly. No reasonable prison guard would have believed that no constitutional right would be violated by such conduct, and thus the district court correctly denied qualified immunity to [Defendant].").

[86] *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

defense; however, the Court notes Defendant is not entitled to qualified immunity on this claim.[87]

To establish an Eighth Amendment violation, a prisoner must demonstrate that an officer's conduct was "sufficiently serious,"[88] and the force used was "maliciously and sadistically for the very purpose of causing harm."[89]   When evaluating such excessive force claims, courts may consider several factors, including (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; (4) the extent of any resulting injury; and (5) any efforts made to temper the severity of a forceful response.[90]   Ultimately, however, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline."[91]   Thus, "[t]he absence of 'serious injury' alone is insufficient to dismiss a prisoner's Eight Amendment

---

[87] *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir.2002) ("[A] defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court.... There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.").

[88] *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994) (describing the objective component of an Eighth Amendment excessive force claim)

[89] *Whitleys*, 475 U.S. at 320-21 (describing the subjective component of an Eighth Amendment excessive force claim); *Skritch v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2992) (extending the same Eighth Amendment standard to cell extractions).

[90] *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting *Whitley*, 475 U.S. at 321).

[91] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

claim."[92]   Consequently, the type of punishment, rather than some arbitrary quantity of injury, is what is relevant to maintaining an Eighth Amendment claim.[93]

Here, Plaintiff was already secured in the holding cell behind a closed door when Defendant Wilks sprayed pepper spray under the door.  Wilks argues Plaintiff was a disturbance by calling him a "faggot" and disobedient by continuing to push the call button.  However, Wilks did not administer the pepper spray to make Plaintiff comply with his orders regarding the call button.  After Wilks came down from the control booth to take Plaintiff to the holding cell, Plaintiff fully complied with all orders and walked with Wilks to the cell.  Plaintiff admits he raised his voice to call Wilks a faggot, but this was after Plaintiff was secure in the cell, and Wilks was already walking away. At this point Plaintiff was no threat to Wilks, himself, or anyone else.[94]   Indeed, Wilks admits his behavior was wrong and unprofessional,[95] and the JSCO disciplined him for this event.  Additionally, there was no attempt to temper the effects of the pepper spray. Nobody cleaned the spot on the floor or provided Plaintiff an opportunity to clean off

---

[92] *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).
[93] *Id.*
[94] *See Vineyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002) (In an excessive force claim under the Fourth Amendment, the Eleventh Circuit found the plaintiff's verbal insults were merely a nuisance and did not create a threat to justify the use of pepper spray when the plaintiff was already secured in handcuffs in the cop car.).
[95] Def. Wilks' Reply Brief, [Doc. 50] at pg 4.

or air out the cell.  Instead, Plaintiff was left in the cell for another six to eight hours with only his shirt to use to cover his face.

Defendant's main argument is that the injury Plaintiff suffered was *de minimus* at most.  However, the Supreme Court has already determined such an argument is at odds with *Hudson v. McMillian*, and the excessive force analysis should not be entirely based on a determination that the injuries were *de minimus*.[96]  Thus, the Court concludes the evidence in this case presents genuine issues of material fact that preclude summary judgment in favor of Defendant Wilks.  Defendant's Motion regarding this claim is **DENIED**.

### C.  State Law Claims

Plaintiffs also bring state law tort claims for assault and battery and negligence against Defendant Wilks.  Defendant contends he is entitled to official immunity under Georgia law because he was acting in his discretionary authority.  Plaintiffs do not contest Wilks was acting in his discretionary authority, but instead argue Wilks is liable because he acted with malice or intent to injure.

The Georgia Constitution confers official immunity to public officials sued in their individual capacities who are engaged in discretionary acts if the act was done

---

[96] *Wilkins v. Gaddy*, 559 U.S. 34, 34, 37-40 (2010) (reversing a district court's dismissal of an excessive force claim "based entirely on its determination that [Plaintiff's] injuries were '*de minimus*.'") (citing *Hudson*, 503 U.S. at 4).

without wilfulness, malice, or corruption.[97]   Official immunity precludes hindsight review of an official's judgment and allows public employees to retain independence of action without fearing personal liability.[98]   Actual malice, in the context of official immunity, is equated with "express malice or malice in fact" and requires a showing of "deliberate intention to do wrong."[99]   Mere proof of ill will, anger, frustration, or irritation is insufficient to establish actual malice.[100]   Rather, the plaintiff must show the public officer acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm the plaintiff.[101]

Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that if a jury were to believe Plaintiffs' version of the facts regarding each incident, a jury could reasonably conclude Defendant Wilks' actions were carried out with the intent to harm Plaintiffs.   Consequently, Defendant Wilks is not entitled to official immunity with respect to Plaintiffs' state law claims.   Defendant's Motion regarding these claims is **DENIED**.

---

[97] *Cameron v. Lang*, 274 Ga. 122, 123 (2001); GA. CONST. art. I, § II, para. IX(d).

[98] *Gilbert v. Richardson*, 264 Ga. 477, 750 (1994).

[99] *Adams v. Hazelwood*, 271 Ga. 414, 414–15 (1999); *see Merrow v. Hawkins*, 266 Ga. 390, 391 (1996).

[100] *Adams*, 271 Ga. at 415; *Woodward v. Gray*, 241 Ga. App. 847, 851 (2000), *overruled on other grounds by Stryker v. State*, 297 Ga. App. 493, 494 (2009).

[101] *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2002) (citing *Adams*, 271 Ga. at 415); *see Kidd v. Coates*, 271 Ga. 33, 33–34 (1999) (defining "actual intent to cause injury" as "an actual intent to cause harm to the plaintiff" encompasses concept of willfulness, malice, or corruption in the context of official immunity)).

### IV. Defendant Wilk's Motion to Sever

In addition to Defendant Wilks's motion for summary judgment, he requests in the alternative for Plaintiffs' case to be severed for trial.  The court agrees the case should be severed for trial.

Under permissive joinder rules, plaintiffs may be joined in one action if they assert claims arising from the same "transaction, occurrence, or series of transactions or occurrences," and there is a "question of law or fact common to all plaintiffs."[102]  Here, Plaintiff Bostic and Plaintiff Odom's claims arise from completely separate events and are evaluated under different standards for excessive force claims–"malicious and sadistic" for Bostic's claim and "objectively reasonable" for Odom's claim.  The Court, in its discretionary authority, finds the case should be severed for trial, and Defendant's Motion is **GRANTED**.

### CONCLUSION

Based on the foregoing, Defendants Jasper County, Roper, and Sheriff Pope's Motion [Doc. 36] is **GRANTED**, and Defendant Wilks' Motion [Doc. 37] for Summary Judgment is **DENIED,** and Motion to Sever is **GRANTED**.  Plaintiffs and Defendant Wilks have an additional 30 days from the date of this Order to complete discovery

---

[102] Fed.R.Civ.P. 20

regarding damages, depose Travis Clemons, and submit a motion for summary judgment if necessary.

**SO ORDERED,** this 29th day of March, 2016.

<u>S/ C. Ashley Royal</u>
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT